CASE NO. 12-15337

---

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

FRANCIS R. CARTER, JR.,

Appellant,

vs.

CITY OF MELBOURNE, FLORIDA, DONALD L. CAREY, and
JACK M. SCHLUCKEBIER,

Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

---

ANSWER BRIEF OF APPELLEE, JACK M. SCHLUCKEBIER

---

ERIN J. O'LEARY, ESQUIRE
Florida Bar No.: 0001510
BROWN, GARGANESE, WEISS, & D'AGRESTA, P.A.
111 North Orange Avenue, Suite 2000
Post Office Box 2873
Orlando, Florida 32802-2873
Telephone (407) 425-9566
Facsimile (407) 425-9596

ATTORNEYS FOR APPELLEE, JACK M. SCHLUCKEBIER

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Court Rule 26.1-1, Appellee, Jack M. Schluckebier, hereby certifies that this is a complete list of the trial judge, all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. Bonner, Robert E. - Counsel for Appellee Donald L. Carey

3. Bradford, Gail C. - Counsel for Appellee City of Melbourne

3. Brown, Garganese, Weiss & D'Agresta, P.A. - Counsel for Appellee Jack M. Schluckebier

4. Byrd, James S. - Counsel for Appellant Francis R. Carter, Jr.

5. Byrd, Tucker H. - Counsel for Appellant Francis R. Carter, Jr.

6. Carey, Donald L. - Appellee

7. Carter, Francis R., Jr. - Appellant

C-1 of 3

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

8.  Chapman, Patricia M. Rego - Counsel for Appellee City of Melbourne

9.  City of Melbourne - Appellee

10. Conway, Anne - United States District Court Judge

11. Dean, Ringers, Morgan & Lawton, P.A. - Counsel for Appellee City of Melbourne

12. Florida League of Cities, Inc., also known as the Florida Municipal Insurance Trust

13. Gougleman, Paul R. - Counsel for Appellee City of Melbourne

14. Hansen, Donna Maloney - Counsel for Appellee City of Melbourne

15. Lane, David R. - Counsel for Appellee Donald L. Carey

16. Meier, Bonner, Muszynski, O'Dell & Harvey, P.A. - Counsel for Appellee Donald L. Carey

17. Mitnik, Keith R. - Counsel for Appellant Francis R. Carter, Jr.

18. Morgan & Morgan, P.A. - Counsel for Appellant Francis R. Carter, Jr.

19. Noah, Douglas T. - Counsel for Appellee City of Melbourne

20. O'Leary, Erin J. - Counsel for Appellee Jack Schluckebier

21. Pendley, Forrest Scott - Counsel for Appellee City of Melbourne

22. Prosser, Damien H. - Counsel for Appellant Francis R. Carter, Jr.

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

23.    Schluckebier, Jack M. - Appellee

24.    Weiss, Jeffrey S. - Counsel for Appellee Jack Schluckebier

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

## STATEMENT REGARDING ORAL ARGUMENT

Appellee, Jack M. Schluckebier ("Schluckebier"), believes all of the issues presented by this appeal can be adequately addressed by the briefs, and therefore, that the decisional process would not be aided by oral argument. Accordingly, Schluckebier suggests that the Court dispense with oral argument.

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

# **TABLE OF CONTENTS**

PAGE(S)

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ..................... C-1

STATEMENT REGARDING ORAL ARGUMENT ...................... i

TABLE OF CONTENTS ........................................ ii

TABLE OF CITATIONS ....................................... v

STATEMENT REGARDING ADOPTION OF BRIEFS
OF OTHER PARTIES ........................................ 1

JURISDICTIONAL STATEMENT ................................ 2

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............. 3

STATEMENT OF THE CASE AND FACTS ......................... 4

    A.    STATEMENT OF THE CASE ............................ 4

    B.    STATEMENT OF THE FACTS ........................... 4

SUMMARY OF THE ARGUMENT ................................ 15

    A.    STANDARDS OF REVIEW ............................. 16

    B.    ARGUMENT AND CITATIONS OF AUTHORITY ........... 19

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

I.  THE DISTRICT COURT CORRECTLY RULED THAT THE CITY MAY NOT BE HELD LIABLE UNDER 42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

II.  THE UNDISPUTED FACTS AND EVIDENCE ON FILE ESTABLISH THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND THAT THE DISTRICT COURT CORRECTLY CONCLUDED THAT SCHLUCKEBIER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNT I (VIOLATION OF FIRST AMENDMENT). . . . . . . . . . . . . . . . . . . 20

   1.  Carter Did Not Speak on a Matter of Public Concern.. . . . . . . 24

   2.  The City of Melbourne's Interests in Promoting the Efficiency of Its Public Services Outweighed Carter's First Amendment Interests.. . . . . . . . . . . . . . . . . . . . . . . . . . . 28

   3.  The Undisputed Material Facts in this Case Establish That Carter's Speech Did Not Play a Substantial Part in His Termination and That Carter Would Have Been Discharged Regardless of Any Protected Speech.. . . . . . . . . 31

III.  SCHLUCKEBIER IS ENTITLED TO QUALIFIED IMMUNITY ON COUNT I (VIOLATION OF FIRST AMENDMENT). . . . . . . 34

IV.  THE UNDISPUTED FACTS AND EVIDENCE ON FILE ESTABLISH THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND THAT THE DISTRICT COURT CORRECTLY CONCLUDED THAT SCHLUCKEBIER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNT II (FALSE ARREST AND FALSE IMPRISONMENT). . . . . . . . . . . 38

V.  SCHLUCKEBIER IS ENTITLED TO QUALIFIED IMMUNITY ON COUNT II (FALSE ARREST AND FALSE IMPRISONMENT). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

iii

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

VI. THE UNDISPUTED FACTS AND EVIDENCE ON FILE ESTABLISH THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND THAT THE DISTRICT COURT CORRECTLY CONCLUDED THAT SCHLUCKEBIER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNT III (MALICIOUS PROSECUTION). ......................... 43

VII. SCHLUCKEBIER IS ENTITLED TO QUALIFIED IMMUNITY ON COUNT III (MALICIOUS PROSECUTION). ............. 47

VIII. THE DISTRICT JUDGE PROPERLY EXERCISED HER DISCRETION IN DETERMINING THAT SHE HAD NO BASIS UPON WHICH TO RECUSE HERSELF. ................... 48

CONCLUSION ........................................... 51

CERTIFICATE OF COMPLIANCE ................................. 52

CERTIFICATE OF SERVICE ................................. 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

## TABLE OF CITATIONS

**Cases**          **Page(s)**

*Alamo Rent-A-Car, Inc. v. Mancusi*,
632 So. 2d 1352 (Fla. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Anderson v. Liberty Lobby, Inc.*,
77 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Austin v. Gaskins*,
No. 4:07cv420-RH/AK, 2008 WL 1994838, at *5 (N.D. Fla. 2008) . . . . . . . . . . 45

*Battiste v. Lamberti*,
571 F. Supp. 2d 1286 (S.D. Fla. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bolin v. Story*,
225 F.3d 1234 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Boyce v. Andrew*,
510 F.3d 1333 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Brown v. City of Huntsville*,
608 F.3d 724 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39

*Bryson v. City of Waycross*,
888 F.2d 1562 (11th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 20, 23, 29, 30

*Busby v. City of Orlando*,
931 F.2d 764 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Carte v. West Publ' Co.*,
1999 U.S. App. LEXIS 38480, at *6, 1999 WL 994997 (11th Cir. 1999) . . . . . . 50

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

*Case v. Eslinger,*
555 F.3d 1317 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Chapman v. A1 Transport,*
229 F.3d 1012 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

* *Chesser v. Sparks,*
248 F.3d 1117 (11th Cir. 2001) . . . . . . . . . . . 20, 21, 23, 24, 25, 29, 34, 35, 36, 37

*City of San Diego v. Roe,*
543 U.S. 77 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Communication Workers of America v. Ector County Hosp. Dist.,*
467 F.3d 427 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Connick v. Myers,*
461 U.S. 138 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 26

*Cook v. Gwinnett County School Dist.,*
414 F.3d 1313 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Costello v. United States,*
350 U.S. 359 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*D'Angelo v. School Board,*
497 F.3d 1203 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Duquesne v. City of Miami,*
No. 12-20575-CIV, 2012 WL 3061603, at *6 (S.D. Fla. 2012) . . . . . . . . . . . . 45

*Ferrara v. Mills,*
781 F.2d 1508 (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

*Garcetti v. Ceballos,*
547 U.S. 410 (2006) .......................................... 21, 22

*Green v. Barrett,*
226 Fed. Appx. 883 (11th Cir. 2007) ............................ 35, 42

*Grider v. City of Auburn, Ala.,*
618 F.3d 1240 (11th Cir. 2010) ................................ 47

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982) ........................................... 34

*Holloman ex rel. Holloman v. Harland,*
370 F.3d 1252 (11th Cir. 2004) ................................ 36

*Hope v. Pelzer,*
536 U.S. 730 (2002) ........................................... 36

*Johnson v. Clifton,*
74 F.3d 1087 (11th Cir. 1996) ................................. 20

*Jones v. Luis,*
372 Fed. Appx. 967 (11th Cir. 2010) ........................... 18, 48

*Kingsland v. City of Miami,*
382 F.2d 1220 (11th Cir. 2004) ......................... 35, 38, 43, 44

*Maggio v. Sipple,*
211 F.3d 1346 (11th Cir. 2000) ................................ 26

*Mayfield v. Patterson Pump Co.,*
101 F.3d 1371 (11th Cir. 1996) ................................ 18

*McCormick v. City of Ft. Lauderdale,*
333 F.3d 1234 (11th Cir. 2003) ................................ 17, 18

vii

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

*Mitchell v. Hillsborough County,*
468 F.3d 1276 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 26

*Morgan v. Ford,*
6 F.3d 750 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25, 26

*Morris v. Crow,*
117 F.3d 449 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 26

*Oladeinde v. City of Birmingham,*
230 F.3d 1275 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Pickering v. Bd. of Educ.,*
91 U.S. 563 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23, 29

*Plaintiff B v. Francis,*
No. 5:08-cv-79-RS-AK, 2008 WL 5263435 (N.D. Fla. 2008) . . . . . . . . . . . . 49, 50

*Posada v. James Cello, Inc.,*
135 Fed. Appx. 250 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Rankin v. McPherson,*
483 U.S. 378 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Rushing v. Parker,*
599 F.3d 1263 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 41, 42

*Saucier v. Katz,*
533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 42

*Sharp v. City of Palatka,*
529 F. Supp. 1342 (M.D. Fla. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 20, 23, 44

*Stavropoulos v. Firestone,*
361 F.3d 610 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

viii

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

*United States v. Bailey*,
175 F.3d 966 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 48

*United States v. Berger*,
375 F. 3d 1223 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 48

*United States v. Greenbough*,
782 F.2d 1556 (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*United States v. Jordan*,
49 F.3d 152 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*United States v. Patti*,
337 F.3d 1317 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Vila v. Padron*,
484 F.3d 1334 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25

*Von Stein v. Brescher*,
904 F.2d 572 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

**United States Constitution**

U.S. Const. amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**United States Code**

28 U.S.C. § 455 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

28 U.S.C. § 455(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

28 U.S.C. § 455(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

42 U.S.C. § 1983 ........................................ *passim*

## Other Authorities

Fed. R. App. P. 32(a)(5) ................................ 52

Fed. R. App. P. 32(a)(6) ................................ 52

Fed. R. App. P. 32(a)(7)(B) ............................. 52

Fed. R. App. P. 32(a)(7)(B)(iii) ........................ 52

Fed. R. Civ. P. 56(c) .................................. 17

§ 838.022(1)(a), Fla. Stat. ............................ 33

§ 839.13, Fla. Stat.. .................................. 33

www.cityofrockeledge.org ............................... 25

www.meriam-webster.com ................................. 24

x

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

## STATEMENT REGARDING ADOPTION OF BRIEFS
## OF OTHER PARTIES

To the extent that any of the argument contained within Issue I of Appellant,

Francis R. Carter's ("Carter") Initial Brief can be deemed to pertain to Carter's claims

against Appellee, Jack M. Schluckebier ("Schluckebier"), Schluckebier hereby adopts

and incorporates, as if fully set forth herein, the argument set forth in Appellee City

of Melbourne, Florida's, Answer Brief in response to Carter's argument in Issue I.

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

## JURISDICTIONAL STATEMENT

Appellee, Jack M. Schluckebier, is satisfied with Carter's statement regarding

the jurisdictional basis for this appeal.

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Appellee Schluckebier is satisfied with Carter's "Statement of the Issues

Presented."

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

## STATEMENT OF THE CASE AND FACTS

### A.    STATEMENT OF THE CASE

Appellee Schluckebier is satisfied with Carter's "Course of the Proceeding and Trial Court Disposition," except for Carter's comment that the District Court's order granting summary judgment was "result-oriented." (Initial Brief, p. 3). Said statement is not appropriately included within the Statement of the Case and instead should have been saved for the argument section of Carter's Initial Brief.

### B.    STATEMENT OF THE FACTS

Appellee Schluckebier is dissatisfied with Carter's "Statement of Facts" because it is argumentative and contains several statements that are not supported by the record citations provided. Schluckebier asserts an unbiased summary of the relevant material facts is set forth in the "Background" section of the District Court's Order (Doc. 142). Schluckebier hereby adopts said "Background" as his Statement of the Facts for purposes of this appeal, and incorporates said Statement as if fully set forth herein.

Additionally, Schluckebier will hereafter advise the Court of several of the specific factual inaccuracies set forth in Carter's Statement of Facts.

Page 4 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

### Page 3 of Initial Brief

At the bottom of the first paragraph under the heading "Statement of Facts," Carter states that Carey retired "as a result of the fallout from Frank's arrest and the State Attorney dropping all charges." Nothing on the record pages cited by Carter, i.e., pages 5 and 6 of Doc. 102-31, supports that statement. Instead, the record on those pages simply reflects that Carey officially retired on January 3, 2011, and does not provide any reason for his retirement.

At the top of the next paragraph, Carter states that "Frank was extremely vocal in his criticism of Schluckebier's management of the City . . ., and cites in part to pages 38-41 and 76 of Doc. 117-6. An examination of those pages reveals, however, that nowhere on those pages is there any mention whatsoever of Carter's criticism of Schluckebier's management of the City. Furthermore, Carter also cites to page 75 of Doc. 117-6 in support of that statement. On page 75 of Doc. 117-6, however, the deponent, Jamie Rocque, simply stated that "Frank [Carter] had expressed concerns with the chief about the city manager"; the subject matter of those concerns was not provided. Moeover, Carter's factual assertion is not supported by the other document that he cites, i.e., Doc. 117-7 - Pg 16. On that page, which is part of Karen Gregory's

Page 5 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

deposition,[1] Gregory testifies about Carter's dislike for Carey; Schluckebier is not even mentioned.  Furthermore, on the next page (page 17), Gregory testifies that Carter had not ever talked to her about Schluckebier.  She stated "I'm not familiar with that name at all." (Doc. 117-7, Pg 17).

## Page 4 of Initial Brief

Contrary to Carter's assertion on page 4 of his Initial Brief, nothing on pages 13 or 14 of Doc. 117-7 supports his statement that he "met frequently with current City Council members to voice his concerns regarding the administration of the City and its impact on the Melbourne community as a whole."  In fact, those pages reflect Karen Gregory's testimony that Carter's efforts in speaking with city council members "was a way for Frank to . . . get the city council so that eventually he could get the results that he wanted to with the Melbourne Police Department." (Doc. 117-7, pg 13-14).  Gregory further testified the result Carter wanted was "to get the chief fired." (Doc. 117-7, pg. 14).

---

[1] Karen Gregory is now known as Karen Gregory-Lynch.  In order to maintain consistency with the District Court's order, she will be referred to herein simply as Karen Gregory or Gregory.

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

## Pages 4-5 of Initial Brief

Carter stated that his "City-wide political activities and powerful influence were a serious concern for Schluckebier" and that Schluckebier "often expressed such concerns to Carey personally." Carter cited Doc. 117-15, pages 21-23 and 45-48, along with Doc. 117-16 in support of those statements. Carter's statements simply are not supported by those pages of the record. On pages 21-23 of Doc. 117-15, when questioned about whether Schluckebier would have a concern for who was supporting certain elected officials, Carey stated he didn't know, because he could not read Schluckebier's mind. (Doc. 117-15, pp. 21-23). Carey did not give any indication whatsoever on those pages that Schluckebier had ever expressed any concerns. Further, on pages 45-48 of Doc. 117-15, Carey testified regarding one specific instance when a council member unexpectedly moved to terminate Schluckebier, where Schluckebier expressed concern about his future and financial security. (Doc. 117-15, pp. 45-48). Contrary to Carter's assertions, nothing on the pages that Carter has referenced indicates that Schluckebier "often expressed" concerns about Carter's "political activities" and "powerful influence" to Carey.

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

## Page 5 of Initial Brief

Carter states that he "frequently met with City Council members after City Council meetings to discuss what he perceived to be a problem with Schluckebier's management of the City." (Initial Brief, p. 5). Carter cites to Doc. 117-15 - Pg 10-11, 15, as support for this statement. To put his factual assertion in its proper context, one should examine the pages to which Carter cites. Pages 10-11 reveal that Carter's frequent meetings consisted of "playing racquetball" and going out for drinks at "local watering holes after council meetings and picking up checks and that sort of thing." (Doc. 117-15, pp. 12-11).

On page 5 of his Initial Brief, Carter states that "Carey testified that Schluckebier personally expressed to him how upset Schluckebier was by Frank's political activities." Carter relies on Doc. 117-15, pages 15-16 in support of that statement. Contrary to the picture that Carter paints about Carey's testimony, when asked whether Schluckebier was upset about the picketing in his neighborhood, Carey simply stated: "He was - - at least it was my impression that he was concerned about business interfering with his family life and his child being exposed to that sort of conflict and tension." (Doc. 117-15, pp. 15-16).

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

Carter states that "Carey also testified that Schluckebier told him that he wanted to prevent Frank and other officers from communicating with City Council members." He cites to Doc. 117-15, pages 13, 45-48, and Doc. 117-19, pages 7-9, in support of this statement. Contrary to Carter's assertions, nothing on any of those pages supports that factual assertion. In fact, on page 46, when Carey was asked whether "Schluckebier specifically asked [him] to do something to prevent officers from talking to city council members," Carey responded, "No, he did not." (Doc. 117-15, p. 46).

**Page 6 of Initial Brief**

Carter states that "[w]hen questioned about these e-mails [regarding Carter's "off-duty political activities" and "rounds with sitting City Council members], neither Schluckebier nor Carey could explain what was improper about [Carter's] off-duty activities or his communications with City Council members or why they were monitoring his communications." Carter cites to Doc. 117-15, pages 45-46, in support of this factual assertion. Importantly, absolutely nothing on those pages supports that assertion. Those pages are a portion of Carey's deposition. Carey was not even asked what was improper about Carter's communications with City Council members or why he and Schluckebier were allegedly monitoring them. Furthermore,

Page 9 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

there is no support for the statement that Schluckebier could not explain what was improper about the communications or why he was monitoring them because Carter failed to provide a citation to the record where Schluckebier was supposedly asked this question.

Carter states that "Schluckebier had significant concerns with the union's power in Melbourne (Doc. 117-6 - Pg 36-37), while Carey was concerned with Frank's campaign platform to organize a vote of 'no confidence' against Carey. (Doc. 117-6 - Pg 49-50)." Carter's statements are, once again, lacking record support. The pages that Carter cited reflect the testimony of Jamie Rocque and his *belief* that Schluckebier and Carey were concerned. Nothing on those pages reflects his knowledge that Schluckebier and Carey were, for a fact, indeed concerned.

### Pages 6-7 of Initial Brief

At the bottom of page 6 of his Initial Brief, Carter writes:

> While participation in the union is not attendant to an officer's employment with the City and occurs in an off-duty capacity, Carey and Schluckebier actively monitored and exchanged e-mails regarding Frank's run for president of the FOP. Here again, neither Defendant could explain why they were monitoring Frank's union activities. (Doc 117-15, 25-26, 50-51; Doc 117-16; Doc 117-18; Doc 118-15 - Pg 25-26; Doc 118-16).

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

Here again, nothing on any one of those pages provides record support for these factual assertions.

## Page 7 of Initial Brief

Carter states that "[w]ithin days of his election as FOP president, Frank was suspended from the MPD by Carey with suspicious cause and over the objection of FDLE." He cites Doc. 117-2, Doc. 117-19 - page 15, and Doc. 117-20 in support of this statement. Through this statement, Carter suggests that FDLE objected to his suspension. An examination of Doc. 117-20 reveals, however, that FDLE did not want to let Carter know of the investigation at that point because it was still pursuing other evidence "to show the pattern of extortion and official misconduct." (Doc. 117-20).

Carter also asserts that "on January 28, 2012, based entirely upon an investigation by MPD Internal Affairs Sergeant Lynch ("Sgt. Lynch" and not the Florida Department of Law Enforcement ("FDLE"), FDLE arrested Frank on multiple charges of official misconduct and falsification of records." (Initial Brief, p. 7) (emphasis in original). Carter cites the following as the record basis for this statement: Doc. 117-8 - Pg 58-59, 70-73, 75; Doc. 117-10 - Pg 130-131; Doc. 117-21. Once again, these portions of the record do not support Carter's statements. In

Page 11 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

fact, there is no "Doc 117-10 - Pg 130-131"; Doc. 117-10 ends at page 110. And,

Doc. 117-21 actually refutes Carter's statement. Page 5 of Doc. 117-21 clearly

indicates that FDLE officers "watched the videos and reviewed the evidence," before

FDLE Agent Ryan Bliss obtained the arrest warrant and arrested Carter.

## Pages 7-8 of Initial Brief

Carter states that Sgt. Lynch's "Investigation Log states that he was **instructed**

by Carey to **fabricate probable cause against Frank** [Carter]." (Initial Brief, pp. 7-

8) (emphasis in original). He relies upon Doc. 117-19, pages 60-63 and Doc. 117-21

as record support for this statement. Once again, Carter's factual statement is not

supported by the portions of the record he has cited. Doc. 117-19 and Doc. 117-21

both reveal that Sgt. Lynch's Investigation Log actually states: "Received the six

disks from IT and began to review them. Established a file to maintain a record of

calls with questionable probable cause. Notified the Chief of this and he advised me

to keep checking and if I see a pattern of conduct to notify him immediately." (Doc.

117-21, pp. 3-4). Nowhere within that log entry is there even a suggestion that Carey

told Lynch to fabricate probable cause.

## Page 8 of Initial Brief

Carter states that:

Page 12 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

> The record evidence further reveals that the arrest affidavit for Frank
> contained completely false and misleading information supplied by Sgt.
> Lynch to FDLE, at the direction of Carey, to make it appear as though
> the investigation into the traffic stops and trespass warnings had
> occurred for months when, in fact, the entire investigation took place in
> two to three days.

(Initial Brief, p. 8) (emphasis in original).  Carter cites the following portions of the

record as support for his statement:  Doc. 117-10 - Pg 130-131; Doc. 117-8 - Pg 58-

59, 70-71, 73; Doc. 117-19 - Pg 118-20; Doc. 117-25; Doc. 117-9 - Pg 96-105.  The

characterization that the affidavit contained "completely false and misleading

information" . . . which was supplied "at the direction of Carey, to make it appear as

though the investigation . . . had occurred for months" is not supported by these

portions of the record.  At best, the record shows there was some sort of typographical

error in the affidavit.  Nevertheless, nothing therein supports the claim that Carey had

anything to do with the error.

Lastly, in footnote 3, Carter states: "Stunningly, while numerous other MPD

officers were disciplined for using the same apartment as a gratuity, none were

terminated and any discipline was withdrawn from their files by Interim Chief Mimbs

immediately after Frank's termination." Carter cites Doc. 117-11, pages 110-114 in

support of this statement.  The only basis on these pages which shows that the

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

discipline imposed against the other officers was "withdrawn from their files" comes

from Carter's counsel, not from the witness being questioned. The dialogue between

the two is as follows:

> Q      Now, the officers that got a written reprimand, do you know what
> happened with that written reprimand?
> A      That's between the chief and the officers.
> Q      Okay. Would it surprise you to find out it was within a month
> withdrawn – within a month rescinded from their file?
> A      Again, that's between the chief and the officers.

(Doc. 117-11, pg. 111). Furthermore, cited pages of the transcript reveal that the

reason Carter was more severely punished over the apartment issue is because

"Officer Carter was the one who handed the keys out to the officers, according to

what the officers said. Mr. Carter was the one, I believe, that the maintenance guy,

Mr. Cody, worked with to get the keys." (Doc. 117-11, p. 110). *See also* Doc. 117-

11, p. 111 ("I have officers that specifically said, 'I got the keys from Frank

Carter.'").

Page 14 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

## SUMMARY OF THE ARGUMENT

Carter appeals from two orders rendered by the District Court: the order finding no basis existed for recusal, and the order granting Defendants/Appellees' motions for summary judgment. The record in this cased establishes there is no issue of material fact and that Appellee Schluckebier was entitled to judgment in his favor as a matter of law.

Carter spoke simply as an unhappy employee, who thought he was disciplined too frequently and too harshly. Although Carter's speech may have been somewhat interesting to the citizens of Melbourne, the main thrust of his speech was to air his personal grievances, with the ultimate goal of getting a new police chief. As such, his speech was not protected by the First Amendment.

Assuming arguendo Carter's speech did touch upon a matter of public concern, the City's interests the efficient operation of its police department by managing its officers and imposing discipline for their wrong-doing outweighed Carter's rights to free speech.

Furthermore, Carter was the subject of an investigation conducted by the Florida Department of Law Enforcement that culminated in the State Attorney charging him criminally, which in turn resulted in the issuance and execution of a

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

warrant for his arrest. Under those facts, it is apparent that Carter would have been discharged regardless of his speech.

Lastly, and most importantly, there is no evidence linking Schluckebier to the investigations of Carter or to Carter's discharge. Carter relies solely upon inference upon inference for his claims against Schluckebier. Under the undisputed material facts of this case, this Court should conclude that Carter's rights under the First Amendment were not violated and that there is no evidence that Schluckebier had anything to do with the investigation or arrest of Carter, or that he was responsible for Carter's termination. If this Court concludes that Carter's rights were violated, this Court should also conclude that those rights were not clearly established, and therefore, that Schluckbeier is protected by qualified immunity.

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

## STANDARDS OF REVIEW AND
## ARGUMENT AND CITATIONS OF AUTHORITY

### A.    STANDARDS OF REVIEW

Issues I through VII of Carter's Initial Brief are directed at overturning the summary judgment entered in favor of the City, Carey, and Schluckebier. This Court must employ the *de novo* standard of review when reviewing an order granting summary judgment, and apply the same legal standards as the standards applied by the district court. *McCormick v. City of Ft. Lauderdale*, 333 F.3d 1234, 1242-43 (11th Cir. 2003) (citation omitted).    Under those standards, summary judgment is appropriate "if the evidence establishes 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id*. at 1243 (quoting Fed. R. Civ. P. 56(c)).    When conducting this review, the evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmoving party. Furthermore, "[o]nly disputes of *material* fact are important at summary judgment." *Id*. at 1243 (emphasis added).

The nonmoving party cannot refute a properly supported motion for summary judgment with mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

248 (1986).  "A mere 'scintilla' of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative, is not enough." *Battiste v. Lamberti*, 571 F. Supp. 2d 1286, 1291 (S.D. Fla. 2008) (citing *Anderson*, 477 U.S. at 252); *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).  If the non-moving party fails to "make a showing sufficient to establish an element essential to his case on which he bears the burden of proof at trial," Rule 56 mandates that summary judgment be entered against him.  *Posada v. James Cello, Inc.*, 135 Fed. Appx. 250 (11th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Thus,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*McCormick*, 333 F.3d at 1243 (quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000)).

In Issue VIII, Carter seeks to overturn the district court's decision that recusal was not warranted in this case.   This Court reviews the denial of a motion for recusal

Page 18 of  53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

for abuse of discretion. *See, e.g., Jones v. Luis*, 372 Fed. Appx. 967, 969 (11th Cir.

2010) (citing *United States v. Berger*, 375 F. 3d 1223, 1227 (11th Cir. 2004)). Under

this standard, this Court should affirm the district court's denial of a motion to recuse

unless "the impropriety is clear and one which would be recognized by all objective,

reasonable persons." *United States v. Bailey*, 175 F.3d 966, 968 (11th Cir. 1999).

## B.   ARGUMENT AND CITATIONS OF AUTHORITY

### I.   THE DISTRICT COURT CORRECTLY RULED THAT THE CITY MAY NOT BE HELD LIABLE UNDER 42 U.S.C. § 1983.

In Issue I, Carter argues that "The City May Be Held Liable Under 42 U.S.C.

§ 1983." This issue is not directed at overturning the district court's ruling entering

summary judgment in favor of Appellee Schluckebier. Instead, it is directed at

overturning the portions of the district court's order concluding that the City may not

be held liable under 42 U.S.C. § 1983. To the extent that any of the argument

contained within Issue I of Carter's Initial Brief can be deemed to pertain to Carter's

claims against Schluckebier, Schluckebier hereby adopts and incorporates, as if fully

set forth herein, the argument set forth in Appellee City of Melbourne, Florida's,

Answer Brief in response to Carter's argument in Issue I.

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

**II.    THE UNDISPUTED FACTS AND EVIDENCE ON FILE ESTABLISH THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND THAT THE DISTRICT COURT CORRECTLY CONCLUDED THAT SCHLUCKEBIER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNT I (VIOLATION OF FIRST AMENDMENT).**

It is well-established that a government employer may not retaliate against or discharge a public employee who engages in protected speech. *See, e.g., Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989); *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001). However, a public employee's right to freedom of speech is not absolute. *Chesser*, 248 F.3d at 1122 (citing *Bryson*, 888 F.2d at 1565). "[G]overnment officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Johnson v. Clifton*, 74 F.3d 1087, 1092 (11th Cir. 1996).

In order to maintain a First Amendment retaliation claim under § 1983, a plaintiff must show that adverse employment action was taken against him in retaliation for engaging in protected speech. *Sharp v. City of Palatka*, 529 F. Supp. 2d 1354, 1368 (M.D. Fla. 2007) (citing *Stavropoulos v. Firestone*, 361 F.3d 610, 618-20 (11th Cir. 2004)). To determine whether a plaintiff has made the requisite showing,

Page 20 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

courts use a test based upon the Supreme Court's decision in *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). *See, e.g., Chesser*, 248 F.3d at 1122 (applying test).

Under that test, the court must first determine whether the speech is protected by the First Amendment. To obtain First Amendment protection, the employee must have spoken "<u>as a citizen</u> on a matter of public concern." *D'Angelo v. School Board*, 497 F.3d 1203, 1209 (11th Cir. 2007) (emphasis in original) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). A public employee does not speak as a citizen on a matter of public concern if he spoke for himself as an employee. *See Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993); *see also Connick v. Myers*, 461 U.S. 138, 146 (1983). Further, "the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment." *Morgan*, 6 F.3d at 754 (citations omitted).

To determine whether speech addresses a matter of public concern, the court must examine the content, form, and context of the employee's speech, as revealed by the whole record. *Connick*, 461 U.S. at 147-48; *Chesser*, 248 F.3d at 1123 (citation omitted); *Cook v. Gwinnett County School Dist.*, 414 F.3d 1313, 1319 (11th Cir. 2005). Relevant factors to consider are: whether the "main thrust" of the speech was essentially public in nature or private; whether the speech was communicated to

Page 21 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

the public at large or privately to an individual; and the speaker's motivation. *Vila v. Padron,* 484 F.3d 1334, 1339 (11th Cir. 2007). In this regard, the court should consider "whether the speech at issue was made primarily in the employee's role as citizen, or primarily in the role of employee." *Morris v. Crow*, 142 F.3d 1379, 1382 (11th Cir. 1998) (internal quotation marks omitted).

Additionally, the court should consider whether the speech communicates "a subject of legitimate news interest, a subject of general interest and of value and concern to the general public at the time." *Mitchell v. Hillsborough County*, 468 F.3d 1276, 1284 (11th Cir. 2006) (quoting *City of San Diego v. Roe*, 543 U.S. 77, 84 (2004)).

If the speech *is not* on a matter of public concern, "the employee has no First Amendment cause of action based on his . . . employer's reaction to the speech." *Garcetti*, 547 U.S. at 418. In other words, "when an employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of a personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick,* 461 U.S. at 147.

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

If the court determines that the speech *is* on a matter of public concern, the court applies "the *Pickering* balancing test, which weighs the employee's free speech interest against 'the interest of the state, as an employer, in promoting the efficiency of the public services it performs.'" *Chesser*, 248 F.3d at 1122 (quoting *Pickering,* 391 U.S. at 568). In making this determination, the court should consider: (1) whether the speech at issue impedes the state's ability to efficiently perform its duties; (2) the time, place, and manner of the speech; and (3) the context of the speech. *Sharp*, 529 F. Supp. 2d at 1364 (citing *Bryson*, 888 F.2d at 1565; *see also Chesser*, 248 F.3d at 1124 (citation omitted).

If the court determines that the employee's interests outweigh those of the state as an employer, the court must then, as its third step, determine whether the speech played a substantial part in the government's decision to demote, discharge, or otherwise engage in adverse employment action against the employee. *Chesser*, 248 F.3d at 1123 (citation and internal marks omitted); *Sharp*, 529 F. Supp. 2d at 1362.

If the plaintiff satisfies this burden and establishes that the speech did play a substantial part in the government's decision to discharge the employee, the court must address the fourth step of the test and determine "whether the government has shown by a preponderance of the evidence that it would have discharged the

Page 23 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

employee regardless of the protected conduct." *Chesser*, 248 F.3d at 1123 (citation

omitted).

### 1.     Carter Did Not Speak on a Matter of Public Concern.

At the outset, it is important to note that Carter asserts his speech was

"motivated by his desire to improve the City's leadership for the welfare of his **fellow**

**citizens**." (Initial Brief, p. 32) (emphasis added).  He further assert that "the matters

at the core of [his] speech affected him personally[,] and **as a citizen of Melbourne**

how could they not." (Initial Brief, p. 28) (emphasis added).  (*See also* Initial Brief,

p. 29 ("record evidence plainly demonstrates that Frank [Carter] spoke as a concerned

citizen . . .."); p. 30 ("[Carter] conducted all of these political activities in his free

time and in his capacity as **a concerned citizen of Melbourne** . . .") (emphasis

added).

The word "citizen" has been defined as: "an inhabitant of a city or town;

*especially* : one entitled to the rights and privileges of a freeman." www.meriam-

webster.com (online definition of "citizen").   Contrary to Carter's numerous

assertions in his brief that he "conducted all of these political activities . . . as **a**

**concerned citizen of Melbourne**" (Initial Brief, p. 30) (emphasis added), the

residents of Melbourne were not Carter's "fellow citizens."  Carter testified at his

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

deposition on December 9, 2011, that **since 2001, he has lived in Rockledge**. (Carter

Depo. Vol. 1, pp. 13-14). Rockledge is an entirely separate city in Florida. *See*

www.cityofrockledge.org. Since Carter did not live in Melbourne, any "public

change" that he was able to affect impacted him only to the extent that it affected his

employment, or to the limited extent that it affected any and all tourists or other

individuals visiting or simply passing through Melbourne. Thus, Carter's assertions

that he engaged in the subject speech "as a concerned citizen of Melbourne" are

clearly belied by his own deposition testimony.

Furthermore, the topics on which Carter spoke were not matters of public

concern. In order for speech to address a matter of public concern, it must relate "to

any matter of political, social, or other concern to the community." *Chesser*, 248 F.3d

at 1123 (citation omitted). To determine whether the speech fulfills this requirement,

the court must examine the "content, form, and context of a given statement, as

revealed by the whole record . . . [and] ask whether the main thrust of the speech in

question is essentially public in nature or private, whether the speech was

communicated to the public at large or privately to an individual, and what the

speaker's motivation in speaking was." *Vila*, 484 F.3d at 1340 (citation and internal

quotation marks omitted); *see also Morgan*, 6 F.3d at 754 ("because '[a]n employee's

Page 25 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

speech will rarely be entirely private or entirely public,' the 'main thrust' of the employee's speech must be determined"). "Content is undoubtedly the most important factor in assessing whether particular speech touches on a matter of public concern." *Mitchell*, 468 F.3d at 1284. However, even speech that "lies near the core of the First Amendment's protection-archetypical public speech - may be deemed private speech." *Id.* at 1284 (citing *Morris*, 117 F.3d at 457, which noted that clear personal animus motivating poling site campaign sign waving may have been sufficient to render that speech essentially private under the *Connick* threshold test). Importantly, "a governmental employee's expression of general dissatisfaction with his working conditions does not normally constitute a matter of public concern." *Communication Workers of America v. Ector County Hosp. Dist.*, 467 F.3d 427, 438 (5th Cir. 2006). Thus, "the relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is 'whether the purpose of the [plaintiff's] speech was to raise issues of public concern.'" *Maggio v. Sipple*, 211 F.3d 1346, 1353 (11th Cir. 2000) (quoting *Morgan*, 6 F.3d at 754)).

Carter asserts the speech for which he was retaliated against, in violation of his rights under the First Amendment, was: (1) his off-duty political support of pro-union candidates for City Council, (2) his picketing of Schluckebier's neighborhood; and

Page 26 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

(3) his run for FOP president with the stated intent of organizing a vote of "no confidence" against Carey. (Doc. 118, p. 7). Carter's purpose in engaging in this subject speech was, however, merely to air his personal grievances, not to raise issues of public concern. As the record establishes, Carter's speech regarding Carey arose from his complaints about Carey, including his belief that Carey imposed excessive discipline. (Doc. No. 107-1, p. 192). Additionally, Carter's union activity was intended to "get a better contract" and address "excessive discipline from the chief." (Doc. No. 107-1, p. 108). And, Carter's communications with City Council members were intended "to develop a relationship from the union point . . . because they're the ultimate people that are going to decide what our, you know, pay is, if we deserve raises and things like that . . .." (Doc. No. 107-1, pp. 109-110). Furthermore, Carter's animosity towards Schluckebier waw related to his desire to have the City Manager hire a police chief whom he liked. (Doc. 107-1, pp. 568-69).

It is well-established that "[a] public employee may not transform a personal grievance into a matter of public concern by invoking a supposed interest in the way public institutions are run." *Boyce v. Andrew*, 510 F.3d 1333, 1344 (11th Cir. 2007) (quoting *Ferrara v. Mills*, 781 F.2d 1508, 1516 (11th Cir. 1986)). In this case, the content, form, and context of Carter's statements, as revealed by the whole record

Page 27 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

reveal that the purpose of Carter's speech was not intended to raise issues of public concern. Carter's speech did not in any way draw the public at large or its concerns into the picture, and was driven entirely by Carter's self-interest in improving his working conditions. Thus, although Carter's speech may have included topics that the public arguably would have been interested in, the main thrust of Carter's speech was to voice his complaints about his working conditions and to try to improve them. Carter has failed to establish that he spoke on a matter of public concern. Summary judgment was, therefore, properly entered in favor of Schluckebier.

2.    **The City of Melbourne's Interests in Promoting the Efficiency of Its Public Services Outweighed Carter's First Amendment Interests.**

As argued above, Carter did not speak on a matter of public concern, and therefore, this Court need not reach the second prong of the test, which is to apply the *Pickering* balancing test and determine whether or not the City's interests in promoting the efficiency of its public services outweighed Carter's First Amendment interests. However, in the event that this Court concludes that Carter did meet the threshold inquiry, this Court should conclude he fails the *Pickering* balancing test.

Under "the *Pickering* balancing test, this Court must weigh the employee's free speech interest against 'the interest of the state, as an employer, in promoting the

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

efficiency of the public services it performs.'" *Chesser*, 248 F.3d at 1122 (quoting

*Pickering,* 391 U.S. at 568). To make this determination, the court should consider:

(1) whether the speech at issue impedes the state's ability to efficiently perform its

duties; (2) the time, place, and manner of the speech; and (3) the context of the

speech. *Bryson*, 888 F.2d at 1565. Furthermore, in considering whether the speech

impedes the state's ability to perform its duties efficiently, the court must examine

"whether the statement impairs discipline by superiors or harmony among co-

workers, [or] has a detrimental impact on close working relationships for which

personal loyalty and confidence are necessary." *Id.* at 1567 (quoting *Rankin v.

McPherson*, 483 U.S. 378, 388 (1987)).

In this case, Carter, who had a long history of disciplinary actions against him

(Doc. 102-8 (Carter Depo. Vol. , pp. 3-10), was adamantly opposed to the discipline

being imposed by Carey, and sought to rile up the other officers against Carey in

order to obtain a vote of no confidence so that he could hopefully get Carey fired.

*See* Doc. 117-7, pg 13-14 (Carter engaged in speech with the desire to "get the city

council so that eventually he could get the results that he wanted to with the

Melbourne Police Department," which was to "get Carey fired."). As the District

Court found, "[i]n a law enforcement agency, there is a heightened need for order,

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

loyalty, morale and harmony, which affords a police department more latitude in responding to the speech of its officers than other governmental employers." (Doc. 142, p. 23) (quoting *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1293 (11th Cir. 2000)). This Court noted in *Oladeinde*, that this Court has previously recognized that "[i]n quasi-military organizations such as law enforcement agencies, comments concerning . . . superior officers' integrity can directly interfere with the confidentiality, esprit de corps and efficient operation of the police department." 230 F.3d at 1293-94 (quoting *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991)). Carter's speech was focused on tarnishing the police chief, with the hope that he would be fired. Carter's speech impeded the City's ability to mete out discipline and maintain harmony in its police department, *see Bryson*, 888 F.2d at 1567, and therefore, tips the *Pickering* balancing test scale in favor of the City. Accordingly, this Court should affirm the district court conclusion that: "The Police Department's interest in conducting effective internal investigations and meting out discipline where it is appropriate outweighs Plaintiff's interest in publicizing his employment-related grievances." (Doc. No. 142, p. 23). For this additional reason, this Court should conclude that summary judgment was properly entered in favor of Schluckebier.

Page 30 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

**3.    The Undisputed Material Facts in this Case Establish
That Carter's Speech Did Not Play a Substantial Part
in His Termination and That Carter Would Have Been
Discharged Regardless of Any Protected Speech.**

Carey was hired as police chief in June of 2003. (Doc. 102-31, pp. 5-6). Carter's speech against Carey began prior to the time Carey was even hired. According to Carter, during the City's interview and selection process, he was advised by other law enforcement agencies that under Carey's leadership, they suffered from excessive discipline and morale issues. (Doc. 102-8, pp. 17-20). Carter then advised his police union of the information he had obtained, with the hope of gaining support for other candidates. (Doc. 102-8, p. 20).

Thereafter, from the time Carey was hired in 2003 until 2009, Carter continued to voice his concern regarding Carey's ability to manage the Melbourne Police Department. (Doc. 102-9, pp. 1-2). Carter's concerns were that there were "excessive morale problems and discipline, and that he [Carey] was . . . not very well liked at his other agencies." (Doc. 102-9, pp. 1-2). Despite the fact that Carter objected to Carey as chief from the very beginning of Carey's tenure, Carter did not believe any of the discipline that Carey imposed upon him over those years was unlawful. (Doc. 102-9, p. 10). Carter disagreed with or disliked the discipline,

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

reprimands, or counseling imposed upon him as a result of many of the numerous

internal investigations conducted on him over the years, but again, did not believe any

of the discipline, reprimands, or counseling was unlawful.  (Doc. 102-9, pp. 10, 12-

25; Doc. 102-10, pp.  1-25; Doc. 102-11, pp. 1-6). Additionally, Carter did not

believe that any of the performance evaluations he received under Carey's tenure

were inappropriate in any way. (Doc. 102-9, p. 11).

Carter's assertion that the internal affairs investigations regarding the

apartment, the traffic stop, Karen Gregory's charges, and the racial profiling and

falsification of records were "merely a complex web of post hoc rationalizations

commenced *after* Defendants decided to terminate" him (Initial Brief, p. 36), is

entirely unsupported by the record on this case.  To begin with, many of the portions

of the record that Carter has cited in support of his claim do not provide the support

that he suggests.[2]  By the time Carter was arrested, the investigations of him had been

---

[2] Specifically, Doc. 117-19, pages 80-81 do not appear to have anything to do
with Karen Gregory's charges.  Second, Doc. 117-18 is a one page document, and
therefore, it does not contain pages 58-59, 70-73, or 75.  Third, Doc. 117-10 ends at
page 110, and therefore, does not include pages 130-131. Fourth, Doc. 117-8, pages
42-45 and 51-53 do not support the statement that Carter was arrested "with little, if
any, independent investigation by FDLE." Lastly, and most importantly, the pertinent
language on Doc. 117-21 speaks for itself, and does not even remotely suggest that
Carey instructed Lynch to "find probable cause in Frank's arrests."

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

ongoing for several months. There is no basis upon which to link his arrest to him

becoming union president. Further, there simply is no basis upon which to portray

these investigations - which followed years of other investigations that resulted in

discipline, reprimands, or counseling - as a "complex web of post hoc

rationalizations" to justify Carter's termination.

Secondly, the record clearly establishes that Carter's arrests followed a series

of investigations that culminated in the State Attorney's Office issuaing an

Information charging Carter with one count of official misconduct - falsifying official

records or official documents, in violation of section 838.022(1)(a), Florida Statutes,

and one count of falsifying records, in violation of section 839.13, Florida Statutes.

(*See* Doc. 106-33). Additionally, FDLE Special Agent Bliss swore out an Affidavit

for Arrest Warrant and presented the affidavit to James H. Earp, Circuit Judge, of

Florida's Eighteenth Judicial Circuit, in and for Brevard County, Florida. (*See* Doc.

106-35). Judge Earp signed the warrant for Carter's arrest. (*See* Doc. 106-36). And,

in January 28, 2010, Carter was arrested by FDLE pursuant to the warrant that had

been issued by Judge Earp. (Doc. 64-4; Doc. 102-19, p. 10). Those actions were all

taken by individuals outside the City of Melbourne, who possessed independent

authority completely unrelated to the City of Melbourne. Furthermore, the decision

Page 33 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

to terminate Carter was made by Interim Chief Mimbs. (Doc. 132, p. 8). There is no

evidence in the record to suggest that Schluckebier had anything whatsoever to do

with any of those actions.

Accordingly, this Court should conclude that he record establishes there is no

dispute of material fact and that Carter would have been terminated regardless of

Carter's speech.

## III. SCHLUCKEBIER IS ENTITLED TO QUALIFIED IMMUNITY ON COUNT I (VIOLATION OF FIRST AMENDMENT).

It is well-established that "[q]ualified immunity protects government actors

performing discretionary functions from being sued in their individual capacities."

*Chesser*, 248 F.3d at 1121-22 (citations omitted). Government officials are shielded

from liability to the extent that "their conduct does not violate clearly established . .

. constitutional rights of which a reasonable person would have known." *Id.* at 1122

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982)). "The essence of

qualified immunity analysis is the public official's objective reasonableness,

regardless of his underlying intent or motivation." *See Harlow*, 457 U.S. at 819. "If

reasonable public officials could differ on the lawfulness of the defendants' actions,

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

the defendants are entitled to immunity." *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (citation omitted).

To receive qualified immunity, the public official claiming it must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Id.* at 1232. Once the public official establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Id.*

When evaluating whether a plaintiff has met his burden to establish that qualified immunity is not appropriate, the court must conduct a two-step inquiry. First, the court must examine the facts in the light most favorable to the party asserting the injury, and determine whether those facts show that the conduct violated a constitutional right. *Green v. Barrett*, 226 Fed. Appx. 883, 885-86 (11th Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. Second, if a constitutional right was violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established." *Green*, 226 Fed. Appx. at 886. "A constitutional right is clearly established if controlling precedent

Page 35 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

has recognized the right in a 'concrete and factually defined context.'" *Chesser*, 248 F.3d at 1122 (citations omitted). Stated differently, "a] right is clearly established when the 'state of the law [at the time of the events in question] gave [defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1278 (11th Cir. 2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). "If the constitutional right has been clearly established, the plaintiff must demonstrate that a reasonable government actor would have known that what he was doing infringed that right." *Chesser*, 248 F.3d at 1122 (citation omitted).

It is undisputed that the actions Schluckebier took with regard to this matter were taken within the scope of his discretionary authority. Accordingly, the burden shifts to Carter to establish that Schluckebier is not entitled to qualified immunity. Carter is unable to satisfy this burden because, examining the facts in the light most favorable to Carter, Schluckebier did not violate Carter's constitutional rights.

The record is devoid of any specific action that Schluckebier took that could constitute a violation of Carter's constitutional rights. All Carter relies upon is inference upon inference, in an effort to create facts that simply do not exist. To begin with, there is no evidence of Schluckebier's direct involvement with any of the

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

events of which Carter has complained. Again, all that Carter relies upon in support of his argument is multiple layers of inferences. Without the requisite factual support, Carter's claims must fail.

Additionally, as discussed above with regard to Issue II, the undisputed material facts of this case establish that Carter's First Amendment rights were not violated. All actions taken against Carter in this matter were discipline for Carter's misconduct. Carter had ample opportunity to challenge those disciplinary actions (*see* Doc. 102-5, p. 133; Doc. 106-3, p. 5), and therefore, suffered no violation of his constitutional rights.

If there was a violation of Carter's constitutional rights, those rights were not clearly established. There simply is no controlling precedent that has recognized, in a "concrete and factually defined context," the rights at issue in this case. *Chesser*, 248 F.3d at 1122 ("A constitutional right is clearly established if controlling precedent has recognized the right in a 'concrete and factually defined contest.'") (citation omitted).

Accordingly, this Court should conclude that qualified immunity was properly entered in favor of Schluckebier in this case.

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

**IV.    THE UNDISPUTED FACTS AND EVIDENCE ON FILE ESTABLISH THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND THAT THE DISTRICT COURT CORRECTLY CONCLUDED THAT SCHLUCKEBIER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNT II (FALSE ARREST AND FALSE IMPRISONMENT).**

It is well-established that law enforcement violates a person's Fourth Amendment rights, and a claim arises under 42 U.S. § 1983, when it arrests the person without probable cause. *Rushing v. Parker*, 599 F.3d 1263, 1265 (11th Cir. 2010) (citation omitted). "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) (citation omitted). The existence of probable cause at the time of an arrest constitutes an absolute bar to a claim under 42 U.S.C. § 1983 for false arrest. *See, e.g., Rushing*, 599 F.3d at 1265; *Kingsland*, 382 F.3d at 1226. To establish liability under § 1983, "a plaintiff must show 'proof of an affirmative causal connection' between a government actor's acts or omissions and the alleged constitutional violation, which 'may be established by proving that the official was

Page 38 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

personally involved in the acts that resulted in the constitutional deprivation."

*Brown*, 608 F.3d at 737 (citation omitted).

In this case, Carter states the following as the basis for his claim that Schluckebier is liable for false arrest and false imprisonment: "As to Schluckebier, there is a reasonable inference that he acted in concert with Carey to secure Frank's [Carter's] arrest based upon their communication regarding Frank's activities and their shared concern over Frank's political and union influence." (Initial Brief, p. 43). To begin with, the evidence in this case shows that Carter did not suffer a violation of his constitutional rights. Furthermore, even if he did suffer such a violation, there simply are no facts in this case establishing that Schluckebier was "personally involved" in it.

Carter previously attempted to state a claim for conspiracy against Schluckebier and Carey, but that claim was dismissed. (Doc. 87). Carter's efforts to re-package the alleged conspiracy as the requisite factual basis for his false arrest and false imprisonment claim should be rejected by this Court. There simply are no facts supporting his claim that Schluckebier was "personally involved" in Carter's arrest or imprisonment. Accordingly, this Court should conclude that summary judgment was properly entered in favor of Schluckebier on Count II.

Page 39 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

Furthermore, probable cause bars Carter's action for false arrest and false imprisonment. The undisputed material facts in this case establish that Assistant State Attorney Wayne Holmes swore out the Information, i.e.,charging document, against Carter. (*See* Doc. 106-33). Additionally, FDLE Special Agent Bliss swore out an Affidavit for Arrest Warrant and presented the affidavit to James H. Earp, Circuit Judge, of Florida's Eighteenth Judicial Circuit, in and for Brevard County, Florida. (*See* Doc. 106-35). Judge Earp issued a warrant for Carter's arrest. (*See* Doc 106-36). Carter was thereafter arrested by FDLE pursuant to the warrant that had been issued by Judge Earp. (Doc. 64-4; Carter Depo. Vol. 3, p. 435).

It is well-established that ". . . an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). Here, three separate individuals, i.e., ASA Holmes, FDLE Special Agent Bliss, and Judge Earp, all made independent determinations of probable cause with regard to the arrest of Carter. Accordingly, ample evidence of probable cause supports Carter's arrest. This Court should, therefore, find that Carter's claim of false arrest and false imprisonment is barred, and that summary judgment was properly entered in favor of Schluckebier.

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

### V.    SCHLUCKEBIER IS ENTITLED TO QUALIFIED IMMUNITY ON COUNT II (FALSE ARREST AND FALSE IMPRISONMENT).

It is undisputed that Schluckebier was acting within the scope of his discretionary authority.    The burden, therefore, shifts to Carter to prove that Schluckebier is not entitled to qualified immunity.

In determining whether qualified immunity exists on a claim for false arrest under § 1983, "the issue is not probable cause in fact but arguable probable cause." *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). "A defendant need only demonstrate that arguable probable cause existed in order to be protected by qualified immunity." *Rushing*, 599 F.3d at 1266 (citations omitted). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Id.* at 1266 (quoting *Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009)).

Applying these principles to this case, this Court must conduct a two-step inquiry in order to determine whether Carter has met his burden of proving that Schluckebier is not entitled to qualified immunity in this case.  First, this Court must examine the facts in the light most favorable Carter, and determine whether those

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

facts show that Schluckebier's conduct violated Carter's constitutional right. See

*Green*, 226 Fed. Appx. at 885-86. If no constitutional right was violated, "there is no

necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at

201. Second, if Carter's constitutional rights were violated under his version of the

facts, this Court must then determine whether there was at least arguable probable

cause to support Carter's arrest.

As set forth above, Carter's constitutional rights were not violated. Therefore,

this Court need not reach the second step. However, if this Court deems it necessary

to reach the second step, this Court should conclude that Schluckebier is entitled to

qualified immunity. Again, three separate individuals, i.e., ASA Holmes, FDLE

Special Agent Bliss, and Judge Earp, all made independent determinations of

probable cause with regard to the arrest of Carter. At the very least, there was

arguable probable cause to support Carter's arrest, and thus, Schluckebier is protected

by qualified immunity. *See Rushing*, 599 F.3d at 1266.

Carter argues there was an error in the arrest affidavit and that "there is a

reasonable inference drawn from this evidence that the falsity of the arrest affidavit

was known to Carey and Schluckebier." (Initial Brief, p. 46). Carter's assertion is

preposterous. There is absolutely no evidence in the record whatsoever that even

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

suggests that Schluckebier had any involvement in the drafting of the arrest affidavit

or that he ever saw the arrest affidavit before it was served upon Carter. Carter's

baseless allegations should be flatly rejected by this Court, and this Court should

conclude that Schluckebier is entitled to qualified immunity on Count II.

## VI. THE UNDISPUTED FACTS AND EVIDENCE ON FILE ESTABLISH THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND THAT THE DISTRICT COURT CORRECTLY CONCLUDED THAT SCHLUCKEBIER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNT III (MALICIOUS PROSECUTION).

It is well-established that in order "[t]o establish a federal malicious

prosecution claim under § 1983, a plaintiff must prove (1) the elements of the

common law tort of malicious prosecution, and (2) a violation of her Fourth

Amendment right to be free from unreasonable seizures." *Kingsland*, 382 F.2d at

1234 (citation omitted). This Court must look to Florida law to determine whether

Carter stated a cause of action for malicious prosecution. *See, e.g., id.*

Under Florida law, in order to prevail in a malicious prosecution action, a

plaintiff must establish that: (1) the commencement or continuance of an original

criminal or civil judicial proceeding against the present plaintiff; (2) the defendant in

the present proceeding was the legal cause of the original proceeding against the

Page 43 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

plaintiff (who was the defendant in the original proceeding); (3) the termination of

the original proceeding constituted a bona fide termination of that proceeding in favor

of the present plaintiff; (4) there was an absence of probable cause for the original

proceeding; (5) there was malice on the part of the present defendant; and (6) the

plaintiff suffered damage as a result of the original proceeding. *Alamo Rent-A-Car,*

*Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994); s*ee also Kingsland*, 382 F.3d at

1234; *Sharp v. City of Palatka*, 529 F. Supp. 1342, 1347-48 (M.D. Fla. 2007). "The

failure of a plaintiff to establish any one of these six elements is fatal to a claim of

malicious prosecution." *Alamo Rent-A-Car, Inc.*, 632 So. 2d at 1355.

Here, Carter cannot establish the requisite elements of malicious prosecution.

To begin with, there is absolutely no evidence to establish that Schluckebier was the

legal cause of the investigations of Carter or that he had any involvement whatsoever

in the arrest and initiation of the prosecution against Carter. In fact, Schluckebier

testified that he never spoke with FDLE personnel about the investigations of Carter

and that he did not play an active role in any investigations of Carter. (Doc. 117-13,

pp. 46-47). That testimony is unrefuted. Secondly, as discussed above, there was

probable cause, or at the very least arguable probable cause, to support Carter's arrest.

Third, there is no evidence of malice on the part of Schluckebier against Carter.

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

Malice has been defined in the context of a malicious prosecution claim as "instigation of a legal proceeding without probable cause." *Austin v. Gaskins*, No. 4:07cv420-RH/AK, 2008 WL 1994838, at *5 (N.D. Fla. 2008) (citation omitted). The decision to file an information and prosecute an individual can be made only by the state attorney. *See, e.g., Duquesne v. City of Miami*, 12-20575-CIV, 2012 WL 3061603, at *6 (S.D. Fla. 2012) (citations omitted). At best, the evidence in this case establishes that Schluckebier did not agree with, or may not have appreciated, some of Carter's actions. Nevertheless, the record establishes that Schluckebier never supplied any information to any of the authorities investigating Carter and that he had absolutely nothing to do with the state attorney's decision to file an Information against Carter.

Carter's argument that "Schluckebier improperly influenced the decision to prosecute by supplying falsified evidence," (Initial Brief, p. 47), lacks any support in the record whatsoever. Further, Carter's statement that "Schluckebier - through Lynch- provided FDLE and the State Attorney's Office with false and misleading information" is likewise baseless. Absolutely none of the portions of the record that Carter has cited support these claims. Carter's conclusions are based upon nothing more than his overactive imagination, and should be flatly rejected by this Court.

Page 45 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

It should also be noted that Carter's assertion on page 43 of his Initial Brief that "Defendants instigated the investigation because their 'ultimate goal[s] [were] to get [Frank] arrested" is not fact. Instead, the portion of the record that Carter cites, i.e. Doc. 117-7, page 58, is simply the testimony of Karen Gregory. Gregory was a complainant in the investigations of Carter. On the cited page of the transcript of her deposition, she states: "I know that they were doing an investigation on him. And, I mean, I know that the ultimate goal was to get him arrested and possibly - - But, I don't know any of the details. I don't know anything about that." (Doc. 117-7, pg. 58). When asked why it was the ultimate goal to get Carter arrested, Gregory responded: "Well, when you have somebody, basically, who's misusing their badge and is what I considered a rogue cop, that - - don't you want them off the police force. Don't you want them off the streets." (Doc. 117-7, pg. 58). Gregory's comments are not a factual basis to support Carter's claim that the defendants "instigated the investigation because their ultimate goals were to get Frank arrested."

Carter cannot establish three of the necessary elements of malicious prosecution. Accordingly, this Court should conclude that summary judgment was properly entered in favor of Schluckebier on Count II.

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

### VII. SCHLUCKEBIER IS ENTITLED TO QUALIFIED IMMUNITY ON COUNT III (MALICIOUS PROSECUTION).

To receive qualified immunity on a malicious prosecution claim, an officer needs to have only arguable probable cause. "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010) (citations omitted). "Showing arguable probable cause does not, however, require proving every element of a crime." *Id.* at 1257 (citations omitted). "If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply." *Id.* (citation omitted).

As set forth above, there was probable cause, or at the very least arguable probable cause, to support Carter's arrest. Furthermore, the record is uncontroverted that Schluckebier never supplied any information to any of the authorities investigating Carter and that he had absolutely nothing to do with the State Attorney's decision to file an Information against Carter. Carter's conspiracy theory based upon nothing more than tiers of inferences should be rejected by this Court, and the District

Page 47 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*

No. 12-15337

Court's order finding that Schluckebier is protected by qualified immunity should be affirmed by this Court.

## VIII. THE DISTRICT JUDGE PROPERLY EXERCISED HER DISCRETION IN DETERMINING THAT SHE HAD NO BASIS UPON WHICH TO RECUSE HERSELF.

This Court reviews the denial of a motion for recusal for abuse of discretion. *See, e.g., Jones*, 372 Fed. Appx. at 969 (citing *Berger*, 375 F. 3d at 1227). Under this standard, this Court should affirm the district court's denial of a motion to recuse unless "the impropriety is clear and one which would be recognized by all objective, reasonable persons." *Bailey*, 175 F.3d at 968.

The grounds for disqualification of a district court judge are set forth in 28 U.S.C. § 455. Under subsection (a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Additionally, under subsection (b), a judge shall recuse herself where she "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

When presented with a motion to disqualify under § 455, the judge must determine "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a

Page 48 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d

1317, 1321 (11th Cir. 2003) (citation and quotation omitted). "The bias must be

personal rather than judicial in nature." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir.

2000) (per curiam) (citation omitted). The relevant inquiry is "how things appear to

the well-informed, thoughtful and objective observer, rather than the hypersensitive,

cynical, and suspicious person." *Plaintiff B v. Francis*, No. 5:08-cv-79-RS-AK, 2008

WL 5263435, at *1 (N.D. Fla. 2008) (quoting *United States v. Jordan*, 49 F.3d

152,156 (5th Cir. 1995)).

In this case, Carter based his "Notice of Potential Conflict of Interest" on the

assertion that Patricia M. Rego Chapman, Esq., one of the associates assisting the

City's lead trial court counsel but whose name does not appear on any of the City's

pleadings filed with the Court, was recently married by Judge Conway and that she

is close friends with Judge Conway's daughter. (Doc. 125, p.2).

The law in the Eleventh Circuit is clear: "[T]here is as much obligation for a

judge not to recuse when there is no occasion for him [or her] to do as there is for him

[or her] to do so when there is." *Plaintiff B*, 2008 WL 5263435, at *7 (quoting *Carte*

*v. West Publ' Co.*, 1999 U.S. App. LEXIS 38480, at *6, 1999 WL 994997 (11th Cir.

1999) ). "[A] judge, having been assigned to a case, should not recuse himself on

Page 49 of 53

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

unsupported, irrational, or highly tenuous speculation." *United States v. Greenbough*, 782 F.2d 1556, 1558 (11ᵗʰ Cir. 1986). To do so would encourage litigants "to advance speculative and ethereal arguments for recusal and thus arrogate themselves a veto power over the assignment of judges." *Plaintiff B*, 2008 WL 5263435, at *8 (citation omitted).

The well-informed, thoughtful, and objective observer would not entertain a significant doubt that Judge Conway, a jurist with over twenty years of judicial experience, would not be impartial in this case simply because she performed a wedding ceremony for her daughter's friend, who happens to be assisting, in a secondary and supportive role, one of the defendants with its defense of this case. This Court should, therefore, conclude that Judge Conway properly exercised her discretion in concluding that this case presents no basis for recusal.

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

## CONCLUSION

Based upon the foregoing, Appellee, Jack M. Schluckebier, respectfully

requests that this Honorable Court affirm both of the orders that are on appeal.

Respectfully submitted on this 25ᵗʰ day of March, 2013.

ERIN J. O'LEARY
Florida Bar No.: 0001510
BROWN, GARGANESE,
WEISS & D'AGRESTA, P.A.
111 North Orange Avenue, Suite 2000
Post Office Box 2873
Orlando, Florida 32802-2873
Telephone (407) 425-9566
Facsimile (407) 425-9596

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(7)

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 10, 138 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface (Times New Roman 14 Point Font).

ERIN J. O'LEARY
Florida Bar Number 0001510

Francis R. Carter, Jr. v. City of Melbourne, *et al.*
No. 12-15337

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that this brief was filed electronically with the Eleventh Circuit Court of Appeals on this 25th day of March, 2013, and that a Notice of Docket Activity was, therefore, e-mailed to all Attorney Filers in this case in accordance with Eleventh Circuit Guide to Electronic Filing, section 7.2. I further certify that on March 25, 2013, a paper copy was transmitted by U.S. mail to: **Damien H. Prosser, Esq.,** Morgan & Morgan, P.A., 20 N. Orange Ave., Suite 1600, Orlando, FL 32801; **Gail C. Bradford, Esq., F. Scott Pendley, Esq., Douglas T. Noah, Esq., and Donna Maloney Hansen, Esq.,,** Dean, Ringers, Morgan & Lawton, P.A., P.O. Box 2928, Orlando, FL 32802; **David R. Lane, Esq., and Robert E. Bonner, Esq.** Meier, Bonner, Muszynski, O'Dell & Harvey, P.A., 260 Wekiva Springs Rd., Ste 2000, Longwood, FL 32779-5947, and in accordance with Eleventh Circuit Guide to Electronic Filing, section 10.2, six copies of this brief were transmitted via Federal Express, to the Clerk of the Court, Eleventh Circuit Court of Appeals, 56 Forsyth Street, N.W., Atlanta, GA 30303.

ERIN J. O'LEARY
Florida Bar No. 0001510

Page 53 of 53